# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ABINGDON ORTHOPEDIC | ) | Case No. 10-72803 |
| ASSOCIATES, P.C. | ) | |
| Debtor. | ) | |
| _____ | ) | _____ |
| ROY V. CREASY, TRUSTEE | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 12-07021 |
| | ) | |
| TIMOTHY MCGARRY, M.D. | ) | |
| Defendant. | ) | |

## MEMORANDUM DECISION

The matter before the Court is an adversary proceeding brought by Roy V. Creasy, the Chapter 7 Trustee, on behalf of Abingdon Orthopedic Associates, P.C. (hereinafter "AOA") to recover property obtained by a creditor, Timothy McGarry, M.D. (hereinafter "Dr. McGarry"), through a pre-petition garnishment summons from the from the Circuit Court of Washington County, Virginia. The matter came before the Court on May 24, 2012 and by Order entered on June 25, 2012, the parties were to file a joint stipulation of facts, memoranda and reply briefs by certain stated deadlines. The parties filed a Joint Stipulation of Agreed Facts and Issues on July 20, 2012. On August 20, 2012, the Trustee filed a Memorandum in Support and Dr. McGarry filed his Memorandum in Opposition. On September 5, 2012, the Trustee filed a Reply Memorandum and Dr. McGarry filed a Second Memorandum in Reply. The matter is now ready for decision. For the reasons set forth below, the Court will dismiss the Trustee's complaint and enter final judgment in favor of Dr. McGarry.

FINDINGS OF FACT

On November 24, 2010, a Chapter 11 Involuntary Petition in Bankruptcy was filed against AOA. On March 30, 2011, Dr. McGarry filed a Proof of Claim in this case claiming an unsecured debt in the amount of $123,727.49. The Debtor listed Dr. McGarry's claim on Schedule F for "Breach of Contract" in the amount of $1.00. To date, neither the Trustee nor the Debtor have filed any objection to such Proof of Claim. In paragraph 3(b) of the Debtor's Statement of Financial Affairs ("SOFA"), the Debtor listed a payment to Dr. McGarry on August 30, 2010 in the amount of $98,463.91 as one being made within 90 days immediately preceding the commencement of the case. Paragraph 3(c) of the SOFA lists several payments to Dr. McGarry made within one year preceding the commencement of the case: $15,098.08 from January thru April, 2010, $38,981.75 between July and October 2010, and the already noted payment of $123,727.49, leaving, according to the SOFA, a balance owing of $1.00. The case was converted to Chapter 7 on July 15, 2011 and the Plaintiff, Roy V. Creasy, was appointed as the Chapter 7 Trustee. The Trustee filed a complaint to avoid and recover the sum of $98,463.91 (hereinafter "the garnished funds") from Dr. McGarry as a preferential transfer pursuant to 11 U.S.C. §§ 547 and 550. In his Answer, Dr. McGarry asserts that the received funds do not qualify as preferential payments because, under Virginia law, the relevant date for determining whether garnished funds fall within the 90-day preference period is the date the judgment creditor obtained a lien upon the bank account rather than the date the funds in the account were paid over to the creditor.

The relevant facts of the underlying garnishment are not in dispute. *See* Joint Stipulation of Agreed Facts and Issues (hereinafter "Joint Stipulation"). Dr. McGarry is a

medical doctor and a former employee, officer, director, and stockholder of AOA.[1]  Pursuant to an arbitration award under the terms of an Employment Agreement, AOA was required to pay Dr. McGarry the value of his interest in AOA.  On May 11, 2009, the Circuit Court of Washington County entered a Final Judgment, reducing the arbitration award to judgment in favor of Dr. McGarry against AOA.  On April 26, 2010, the Clerk issued a Writ of *Fieri Facias* ("the Writ") on the judgment, which was placed in the hands of the Sheriff on April 28, 2012.  Subsequently, a Notice of Lien was issued and filed with the Clerk.

On July 9, 2010, Dr. McGarry filed a Suggestion for Summons in Garnishment, requesting the issuance of a Garnishment Summons to be served on BB&T and AOA with respect to the judgment.  The clerk issued the Garnishment Summons the same day, returnable on September 13, 2010.  On July 28, 2010, Dr. McGarry filed a Corrected Suggestion for Summons in Garnishment with the Clerk to correct the itemization of the amount owed on the judgment.  BB&T filed an Answer to the Garnishment Summons with a check for $98,363.91 dated August 30, 2010, payable to Dr. McGarry.  The garnished funds were taken from the operating checking account of AOA.  No deposits were made to that account on or after August 26, 2010.  The parties further stipulated that the ninety (90) day period prior to the filing of the bankruptcy petition for which preferential transfers are subject to recovery began on August 26, 2010; that the transfer was made for or on account of an antecedent debt of AOA owed to Dr. McGarry; and that if the transfer of the interest in property occurred when the check was issued

---

[1] According to the Joint Stipulation, Dr. McGarry resigned as an employee, officer and director on July 18, 2007.  The Trustee has not made any contention that Dr. McGarry was an "insider" of the Debtor within the definition set forth in 11 U.S.C. § 101(31) at the time the challenged payment was made to him in 2010.

by BB&T to Dr. McGarry on August 30, 2010 or thereafter, AOA was insolvent, as defined by 11 U.S.C. §101(32), at the time the transfer was made.

## CONTENTIONS OF THE PARTIES

The Trustee makes two primary arguments in support of his position that the transfer of funds from AOA to Dr. McGarry is an avoidable preference.  First, the Trustee argues that, although Dr. McGarry may have created a lien outside of the preference period, it was not perfected until he received the payment.  The Trustee cites *Lynch v. Johnson*, 196 Va. 516, 84 S.E.2d 419 (1954), in support of the statement that, with a garnishment, the creditor does not acquire a clear and full lien upon the specific property in the garnishee's possession, but only such a lien as gives him the right to hold the garnishee personally liable for its value.  *Id.* at 520.  Further, the Trustee looks to the *Freedom Group, Inc. v. Lapham-Hickey Steel Corp.*, 50 F.3d 408 (7th Cir. 1995), decision in which the Seventh Circuit concluded that, for the purposes of preference avoidance, the transfer of a garnishment payment from a bank account occurs when the final order is issued.  Because the funds were taken out of AOA's bank account after August 26, 2010, the date on which the preference period began, the Trustee argues that the payment is an avoidable preference.

The Trustee's second argument is that Dr. McGarry failed to properly enforce his lien prior to its expiration, resulting in a transfer of AOA's property to an unsecured creditor within the preference period.  In Virginia, a garnishment summons is a means of enforcing a lien created by a writ of *fieri facias* and a garnishment cannot proceed without a valid lien on that property. The Trustee asserts that the lien expired on the return date of the Writ and cannot be

enforced for an additional year because under Virginia Code § 8.01-505 the operating account is not an intangible asset. Additionally, the Trustee claims that the initial Summons failed to strictly satisfy the requirements for a garnishment summons, as it contained an incorrect statement of the "TOTAL BALANCE DUE." The Corrected Summons was filed on July 28, 2010, the day after the return date on the lien. Thus, the Trustee reasons that Dr. McGarry failed to validly enforce his lien before it expired and, as a result, BB&T made a payment of AOA's funds to an unsecured creditor within the preference period.

In response, Dr. McGarry asserts that the payment is not an avoidable preference and argues that, for the purpose determining preferences avoidable under 11 U.S.C. §547(b), the transfer occurs when the Writ is delivered to the Sherriff. He points to several cases that support his position, s*ee, e.g.*, *Walutes v. Baltimore Rigging Co.,* 390 F.2d 350 (4th Cir. 1968); *Hughson v. Dressler Motors, Inc. (In re Hughson)*, 74 B.R. 438 (Bankr. W.D. Va. 1987); *In re Wilkinson,* 196 B.R. 311 (Bankr. E.D. Va. 1996); *In Re Lamm,* 47 B.R. 364 (Bankr. E.D. Va. 1984), and reject that of the Seventh Circuit in *Freedom Group*, 196 B.R. at 321–22. In this case, the Writ was delivered to the Sheriff on April 28, 2010. As a result, Dr. McGarry argues that the lien was obtained and perfected outside the preference period and, thus, the garnished funds are not recoverable as a preference.

Dr. McGarry also contends that the Writ did not expire prior to the transfer of funds. His counsel cites § 8.01-479 of the Virginia Code, which states that the lien created by a writ of *fieri facias* on intangibles may be enforced for up to "one year from the return day of the execution pursuant to which the lien arose." The original Summons was issued and served prior to the beginning of the preference period and within one year of the return date of the Writ. Dr.

McGarry argues, therefore, that the lien is not a preferential transfer, the garnishment proceeding was properly commenced to enforce the lien, and the money paid to him pursuant to the garnishment is not an avoidable preference.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. An action to determine, avoid or recover preferences is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (F). The Court need not determine whether its ruling upon the claim asserted might be called into question under the Supreme Court's decision in *Stern v. Marshall*, ____ U.S. ____, 131 S.Ct. 2594, 2604-05 (2011), because counsel for both parties have expressly consented to this Court's entry of a final judgment in this matter by letters docketed on September 18 and 19, 2012.

As set forth in the Joint Stipulation, the issues before the Court are: (1) Did the transfer of an interest in property of AOA to Dr. McGarry occur when the check on the Garnishment Summons was written or delivered by BB&T to Dr. McGarry within ninety (90) days before the filing of the Involuntary Petition in bankruptcy against AOA? (2) Did the transfer of an interest in property of AOA to Dr. McGarry occur when the Writ of *Fieri Facias* was delivered to the Sheriff for service and/or when the Garnishment Summons was issued to BB&T outside the period of ninety (90) days before the filing of the Involuntary Petition in bankruptcy against AOA? (3) Was the receipt of the check for $93,363.91 issued by BB&T to

Dr. McGarry as a result of the Garnishment Summons a preferential transfer to him that can be recovered by the Trustee?

This Court has had recent occasion to deal with many of the same issues which are presented in this adversary proceeding. In the case of *In re Jones,* No. 11-71854, a judgment creditor had collected before bankruptcy earnings from the debtor pursuant to a state garnishment proceeding. Several different checks payable to the creditor were involved, all but one of which were issued more than ninety days before the debtor's bankruptcy petition was filed. The last check was issued on exactly the ninetieth day before filing. The debtor attempted to recover all of the pre-petition earnings paid over to the creditor upon the rationale that the debtor was not completely divested of ownership in the garnisheed funds until after the state court had turned over the checks to the judgment creditor, which was within ninety days of the filing date. This Court, in an April 6, 2012 decision,[2] rejected that contention and followed an earlier published decision by Judge Ross W. Krumm of this Court in the case of *Hughson v. Dressler,* 74 B.R. at 440, to the effect that the establishment of the lien upon the wages established more than ninety days before filing was the critical factor and that the only wages

---

[2] This decision is available on the Court's website: www.vawb.uscourts.gov. In its opinion this Court formulated the decisive issue as follows:

> Boiled down to their essence, the arguments of the parties come down to one critical question: whether the "transfer" which is controlling with respect to their dispute is the date the checks for the garnisheed wages were sent by the Virginia court to Creditor, as the Debtors assert, or is a series of dates on which the wages in question were actually earned and became subject to the existing lien of the prior garnishment summons.

Slip Op. at p. 5.

which might be recovered as a preference would be those wages resulting from work actually performed by the debtor within the ninety days preceding the filing date. *Accord, In re Wilkinson*, 196 B.R. 311, 319-22 (Bankr. E.D. Va. 1996).

Va. Code § 8.01-501 provides that a writ of *fieri facias* creates a lien "on all the personal estate of or to which the judgment debtor is, or may afterwards and on or before the return day of such writ . . . become, possessed or entitled, in which, from its nature is not capable of being levied on" which is effective "from the time it is delivered to a sheriff[.]"  As pertinent to the situation presented here such lien continues in existence for "one year from the return day of the execution pursuant to which the lien arose[.]"  Va. Code § 8.01-505.  Counsel for the Trustee asserts that a bank account is outside of the definition of "general intangible" contained in § 8.9A-102(42) of the Code of Virginia, which is title 9 of the Uniform Commercial Code, as adopted and in effect in Virginia.  While that assertion is correct, it is not pertinent to the interpretation of § 8.01-501 because the definitions contained in § 8.9A-102 are expressly applicable to the interpretation and application of title 8.9A of the Code ("In this title") and not generally.  A deposit account in a bank represents the indebtedness of the bank to its depositor. It is not a specific pile of cash in the bank's vault representing the customer's deposit with the bank which might be seized by the sheriff in the manner of, for example, gold coins or currency in a bank safe deposit box of which the constable could physically take physical possession and turn over to the judgment creditor.  In short, a bank deposit account is a "chose in action" in favor of the customer against the bank. *Johnston Memorial Hospital v. Hess (In re Hess)*, 44 B.R. 598, 600 (W.D. Va. 1984).  Accordingly, it is clear that the bank depositor's claim against the bank is a type of intangible personal property which "from its nature is not capable of being

-8-

levied on." As such, it is clearly within the scope of § 8.01-501. Under the facts stipulated here, Dr. McGarry's lien against his judgment debtor's bank account became effective on April 28, 2010, the date the writ of *fieri facias* was delivered to the Sheriff of Washington County, Virginia. That lien remained effective as of the date that the check representing the proceeds of the bank account was turned over to Dr. McGarry. Those proceeds then became the property of Dr. McGarry. Even though that payment upon Dr. McGarry's judgment occurred within ninety days prior to AOA's bankruptcy filing, it represented a transfer in partial satisfaction of an existing lien upon that account which had been created more than ninety days before such bankruptcy filing. For that reason the payment is not preferential within the meaning of § 547 of the Bankruptcy Code because a lien creditor is entitled in bankruptcy to the benefit of its lien against the debtor's property. The same result would follow, for example, if AOA had made an enforceable and perfected pledge of the deposit account to Dr. McGarry to secure its obligation to him and then had filed bankruptcy more than ninety days later. Dr. McGarry would be entitled to hold the account against the claims of the Chapter 7 bankruptcy trustee. In short, the important date is the date the valid and enforceable lien is established, not the date that the creditor obtains the benefit of its lien, provided that such lien remains viable when the funds are turned over to the lien creditor.

    To answer the three questions posed in the Joint Stipulation, the answer to each of the first two questions is "yes" because a transfer of AOA's property to Dr. McGarry occurred both when the lien was established in the bank account upon the delivery of the writ to the Sheriff and when its bank, pursuant to the garnishment summons, paid over the deposit account balance to Dr. McGarry via the Sheriff. For preference purposes, however, the critical date is

when the lien arose, not when it was (partially) satisfied, as long as it was satisfied while that lien continued to exist, as was the situation here. Therefore, the answer to the third question is "no" because for the reasons noted above the receipt of the bank check was not a preferential transfer which the Trustee is empowered to recover from Dr. McGarry.

An Order in accordance with the above decision will be entered contemporaneously herewith.

This 11th day of October, 2012.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE